FILED
2015 Sep-25  PM 12:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **BILLIE S. HAMILTON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 1:14-cv-01588-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Billie S. Hamilton brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed applications for a period of disability, DIB, and SSI on August 30, 2011. (Tr. 105-108, 163, 165). The Social Security Administration denied Plaintiff's applications on November 11, 2011. (Tr. 54). Upon Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a hearing on April 16, 2013 (Tr. 359-407) and issued an unfavorable decision on June 27, 2013. (Tr. 15-34).

On August 19, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision, and submitted additional evidence consisting of miscellaneous medical records dated May 7, 2012 to March 18, 2013. (Tr. 9-10). The Appeals Council denied Plaintiff's request for

review on July 30, 2014. (Tr. 5-8). The denial rendered the ALJ's decision the final decision of the Commissioner, and therefore, a proper case for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Plaintiff filed a complaint for review in this court on August 14, 2014.[1]

## II.    Facts

Plaintiff was 36 years old at the time of the ALJ's decision.  (Tr. 191, 105, 369).  Plaintiff has a high school education and had previously held jobs as a packer, a court clerk, a material handler, a creeler, and a boatswain's mate in the Navy. (Tr. 171, 370, 373-374). Plaintiff reports that she stopped working in May 2010. (Tr. 170). Plaintiff's earnings records do not reflect any income after 2008.  (Tr. 136-140).

Plaintiff alleges disability due to muscle spasms, pinched nerves, migraine headaches, and shocking sensations in her arms. (Tr. 170). Plaintiff initially alleged onset of disability on May 1, 2010 (Tr. 105), but at her hearing, she amended her onset date to June 18, 2011 to avoid res judicata. (Tr. 367-368). Plaintiff's date last insured for her DIB claim was June 30, 2011. (Tr. 165).

Plaintiff has a history of cervical disk herniation at C5-6 (Tr. 271-285), and she underwent a cervical fusion surgery in August 2009. Prior to the surgery, Plaintiff received care from Dr. Wael Hamo, who conducted EMG and nerve connection studies in July 2009 to investigate Plaintiff's complaints of pain, numbness and tingling. (Tr. 283). The medical evidence of record does not document any treatment between February 2010, when the prior ALJ determined that Plaintiff's disability had ended, and August 24, 2011, when Plaintiff returned to her chiropractor after an absence of nearly two years with complaints of pain in her neck, right trapezius region, and right arm. (Tr. 212). Plaintiff returned for a follow-up chiropractic visit two

---

[1] Plaintiff was initially awarded a closed period of disability between August 13, 2008 and February 1, 2010 in a decision issued by a previous Administrative Law Judge on June 17, 2011. Plaintiff did not appeal that decision. (Tr. 15, 166).

days later, on August 26, 2011. (Tr. 213). There is no evidence of any subsequent follow-up chiropractic treatment.

An MRI ordered by Dr. Hamo and conducted on September 1, 2011 showed postsurgical fusion changes at C5-6, along with "very minimal" disk bulge at C4-5, but the scan was otherwise normal. (Tr. 249). Plaintiff returned to Dr. Hamo's office on October 3, 2011 citing pain in her neck and in her left and right occipital areas. (Tr. 281). Among the treatments recommended by Dr. Hamo were a lumbar MRI and an electromyography study to evaluate her pain, but Plaintiff chose to wait rather than undergoing the testing. (Tr. 281). Later that month, Dr. Kenneth Varley, a pain specialist, reviewed Plaintiff's fusion surgery and found that the affected area had healed well. (Tr. 218-219). Dr. Varley then performed the first of a series of epidural steroid injections to relieve pain. (Tr. 218).

On October 21, 2011, Dr. Robert Heilpern, a State agency medical consultant, completed a residual functional capacity assessment based on close review of Plaintiff's medical records. (Tr. 38-49). The assessment did note that Plaintiff should avoid concentrated exposure to conditions like extreme cold, extreme heat, noise and vibration, among others, to mitigate her migraines, but Dr. Heilpern's non-examining evaluation concluded that someone in Plaintiff's condition could perform light work with some limitations. (Tr. 46, 49). The report also noted that there were a significant number of jobs that existed in the national economy for which Plaintiff was physically able to perform. (Tr. 49).

In a visit on November 1, 2011 to Dr. Varley, upon Plaintiff's report of continued pain and discomfort, Dr. Varley noted that Plaintiff's physical presentation was inconsistent with her reported level of pain, and that there appeared to be an "element of symptom magnification." (Tr. 221). Dr. Varley noted that Plaintiff's representations of her pain were "inconsistent with the

underlying physiologic and pathologic basis of her pain," and that "certainly the validity of her underlying pain complaints is brought into question." (Tr. 221). Dr. Varley then performed the second of the steroid injections. (Tr. 221). The record does not indicate that Plaintiff returned to receive the final injection of the series.

Plaintiff again visited Dr. Hamo on November 30, 2011 and February 24, 2012, reporting that the treatments from Dr. Varley were not alleviating her pain. (Tr. 275-276, 279-280). In each visit, Dr. Hamo performed nerve block procedures. (Tr. 275, 279). Dr. Hamo also recommended that Plaintiff consult with an orthopedic specialist about her pain, but her medical records do not indicate that she ever visited an orthopedic specialist. (Tr. 276). A physical capacity evaluation and clinical assessment of pain were completed by Dr. Hamo on December 14, 2011. (Tr. 277). In these reports, Dr. Hamo indicated that Plaintiff's pain would cause her to be unable to adequately perform her daily activities or to work, and that physical activity could exacerbate her pain. (Tr. 277).

On May 7, 2012, Plaintiff established care with Dr. Imad Khdair at the Craddock Health Center, and reported tremors and very severe abdominal pain. (Tr. 256). Dr. Khdair then admitted Plaintiff to Coosa Valley Medical Center for further evaluation and testing. (P. 263-267). Plaintiff was discharged the same day after test results revealed no acute abnormalities. (Tr. 269).

On May 17, 2012, Plaintiff returned to Dr. Hamo, reporting tremors in her arm and tingling, cramping, and numbness in her elbow. (Tr. 272). Plaintiff told Dr. Hamo that these symptoms all occurred after "doing activity at work" (Tr. 272); despite this disclosure to Dr. Hamo, in connection with this claim, she has reported not being able to work since 2010. (Tr. 171). Dr. Hamo recommended MRI, MRA, and Doppler scans testing to evaluate Plaintiff's

4

reported symptoms, and again referred Plaintiff to Dr. Khdair. (Tr. 273). That same day, Plaintiff visited Dr. Khdair's office. Records indicate that Dr. Khdair did not make a notation about any tremor. (Tr. 257).

On May 23, 2012, tests ordered by Dr. Hamo on May 17, 2012 were performed. Neither test revealed any abnormalities. (Tr. 288-289). On June 20, 2012, Plaintiff followed up with Dr. Hamo, where Dr. Hamo informed Plaintiff that her tests revealed no significant findings. (Tr. 295). Records indicate that Plaintiff made additional visits to Dr. Hamo's offices for pain treatment through February 4, 2013, but that on separate occasions she either refused or failed to schedule the diagnostic tests and treatments he recommended. (Tr. 296, 305).

## III.     The ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in substantial gainful activity when her earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. A claimant cannot claim disability if found to engage in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment, or combination thereof, that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404,

Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

In the fourth step of the analysis, if the claimant does not meet the listed criteria, the ALJ may still find disability, after completing a residual functional capacity ("RFC") assessment. 20 C.F.R. § 404.1520(e). Based on this RFC assessment, the ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Should the ALJ find that the claimant is capable of performing past relevant work, the claimant is deemed not disabled. *Id.* However, if the ALJ finds that the claimant cannot perform past relevant work, then the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). At this stage of the analysis, the fifth and final step, the burden shifts to the ALJ to prove that, given a claimant's RFC, age, education, and work experience, a claimant is capable of making a successful adjustment to other jobs, which are available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

In this case, the ALJ concluded that Plaintiff was not under a disability from June 18, 2011 onward. (Tr. 33). In following the initial component of the five-step analysis, the ALJ found that Plaintiff was not engaging in substantial gainful activity in the relevant time period. (Tr. 17). The ALJ next determined Plaintiff has the severe impairments of carpal tunnel syndrome, status post anterior cervical discectomy and fusion at C5-6, migraine headaches, and occipital neuralgia. (Tr. 18-25). At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 25-26). Relying on Dr. Heilpern's assessment of Plaintiff's medical records, the ALJ then held that Plaintiff has the RFC

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). (Tr. 26-32). Upon finding that Plaintiff was unable to perform any past relevant work, the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform considering her age, education, work experience and RFC. (Tr. 32-33).

## IV.   Plaintiff's Argument for Reversal or Remand

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. at 13). Plaintiff presents two arguments: (1) the Appeals Council erred in basing its decision on the opinion of Dr. Heilpern, a state agency non-examining reviewing pediatrician, rather than on the opinion of her treating neurologist Dr. Hamo (Pl.'s Mem. at 3); and (2) the ALJ erred in relying on Dr. Heilpern's assessment of her RFC, which was given before all of the medical records submitted as evidence in this case were created. (Pl.'s Mem. at 11-12). Any other contentions that may have been made by Plaintiff are waived. *See Cunningham v. Dist. Att'y Office for Escambia Cnty*, 592 F. 3d 1237, 1254 n.9 (11th Cir. 2010); *Copher v. Comm'r of Soc. Sec.*, 429 F. App'x 928, 930 n.1 (11th Cir. 2011).

## V.   Standard of Review

The only determinations to be made by this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983)). Considering the final decision as whole, the court may only decide if the decision is reasonable and supported by substantial evidence. *See id.*

Substantial evidence is the relevant evidence "a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence exists in support of the Commissioner's decision, his decision must be affirmed, even if the evidence preponderates to the contrary. *See Id*. However, the court notes that judicial review, although limited, "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

### A.    The ALJ Properly Articulated Good Cause for Giving Less Weight to the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that substantial evidence does not support the decision denying disability benefits, and that improper legal standards were applied because the ALJ discounted the opinion of her treating physician, Dr. Hamo, in favor of the opinion of the non-examining, medical consultant Dr. Heilpern. (Pl. Mem. At 7-8). In her brief, Plaintiff correctly notes that the opinion of a treating physician, such as Dr. Hamo, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  In this circuit, "good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v.*

8

*Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). When electing to discount the opinion of a treating physician, the ALJ must clearly articulate its reasons. *Id*.

Here, the ALJ properly found there was good cause to disregard the opinion of Dr. Hamo, and in so doing, gave clearly articulated justifications for that determination. Those justifications stem from the overall pattern of Plaintiff's medical treatment, and the ALJ's opinion details at some length the portions of the record that reveal cause to discount Dr. Hamo's opinion. For instance, the record details numerous instances where Plaintiff actually refused further examination and treatment from Dr. Hamo. As the ALJ noted in her opinion, in both October 2011 and February 2012, Plaintiff declined to allow Dr. Hamo to perform a lumbar MRI scan and electromyography studies in response to her complaints of back pain. (Tr. 29) The ALJ's opinion also pointed out that Plaintiff refused Dr. Hamo's suggested performance of cervical spine nerve block, occipital nerve block, carpal tunnel injection, and shoulder injection procedures in June 2012. (Tr. 29). Finally, the ALJ's decision noted that in February 2013, Plaintiff refused another nerve block procedure recommended by Dr. Hamo. (Tr. 29). As stated in the ALJ's decision, such a pattern of refusing treatment seems "unreasonable, given [Plaintiff's] statements about the alleged effect of [her complaints of chronic pain] on her ability to perform normal activities of work and daily living . . . ." (Tr. 29). Moreover, the ALJ was careful to note that there were consistent findings of very few, if any, abnormalities in the examinations that actually were conducted by Dr. Hamo and Dr. Khdair. (Tr. 29, 30). It simply cannot be said that, given the pattern of Plaintiff's treatment, that Dr. Hamo's physical capacity evaluation opinion -- which stated that Plaintiff's pain would cause her to be unable to adequately perform work activities -- was consistent with his own records. Thus, the third prong from *Phillips* for finding good cause to discount Dr. Hamo's opinion applies.

Perhaps more troublingly, the record shows that Dr. Varley expressed that there appeared to be an "element of symptom magnification" during his evaluation and treatment of Plaintiff. (Tr. 221). As noted by the ALJ, such an observation from a doctor specializing in pain management is evidence that Plaintiff has "overstated the severity, persistence, and debilitating effects of her pain issues." (Tr. 28-29). An inference drawn from Dr. Varley's statement -- that Plaintiff has magnified her symptoms and is more able to perform in a work environment than she otherwise would have her doctors believe -- undermines the findings contained in Dr. Hamo's opinion. As the ALJ opinion noted, "After careful consideration of the evidence . . . [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptom; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…." (Tr. 28). Such a contravention in the evidence would appear to satisfy the second element in *Phillips*. In this instance, the court defers to the ALJ's finding that Plaintiff was only partially credible, s*ee Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ."), because substantial evidence supports a finding which is contrary to the examining doctor's opinion.  This provides good cause for the ALJ to have looked to Dr. Halpern's non-examining opinion (which was consistent with substantial evidence in the record) while discounting the examining opinion of Dr. Hamo.

In addition, Dr. Hamo's record of treatment for Plaintiff was inconsistent with his own opinion.  When there is such an inconsistency, and when substantial evidence supports a conclusion contrary to that opinion, an ALJ's finding of good cause to discount an examining physician's medical opinion in favor of a non-examining physician's opinion is well supported. Accordingly, Dr. Hamo's opinion was not owed "substantial or considerable weight" before the

ALJ. The court finds the ALJ properly articulated reasons for discounting the opinion of the non-examining physician, and those reasons are supported by substantial evidence, as required by the standards set forth by the Eleventh Circuit.

      **B.**      **The ALJ Properly Found that the Non-Treating Physician's Opinion Was Consistent with the Evidentiary Record as a Whole.**

Plaintiff contends, in the alternative, that the ALJ erred by relying on Dr. Heilpern's opinion because the opinion, dated October 21, 2011, was rendered before much of the evidentiary record was created. However, here, the timing of Dr. Heilpern's opinion in relation to the rest of the evidentiary record is immaterial. In general, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527(c)(4); *Rodgers v. Astrue*, No. 2:12-CV-00840-RDP, 2013 WL 3943289, at *7 (N.D. Ala. July 30, 2013). As the Commissioner correctly notes, the "mere fact that Dr. Heilpern's opinion was issued prior to the development of other evidence in the record does not undermine the ALJ's decision to give the opinion greater weight . . . where . . . the opinion was consistent with the evidence as a whole and the ALJ had evaluated all of the evidence." (Def. Mem. at 9); *See Forrester v. Comm'r of Soc. Sec.*, 455 F.App'x 899, 901 (11th Cir. 2012) (finding that substantial evidence supported ALJ's decision to credit non-treating sources' opinions over treating physician's opinion, since ALJ determined that treating physician's opinion was not bolstered by evidence, but rather, record evidence supported contrary finding); *see also Good v. Astrue*, 240 F.App'x 399, 401, 407 (11th Cir. 2007) (finding no error in ALJ's decision to give greater weight to non-examining physician over the opinion of a treating physician although the non-examining physician's opinion was issued before the treating physician ever began treating the claimant).

The court finds that the ALJ properly considered the evidence of Plaintiff's case as a whole before deciding to give Dr. Heilpern's opinion greater weight. The ALJ made this explicitly clear when she said, "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." (Tr. 27). The ALJ explained her decision to give Dr. Heilpern's non-examining opinion greater deference, noting that "[Dr. Heilpern's opinion] is supported by the record, when considered as a whole, especially in light of the course of treatment prescribed to [Plaintiff] for her impairments, the opinion evidence . . . and the medical treatment records . . . all of which suggest greater sustained capacity than described by [Plaintiff]." (Tr. 32). The ALJ's decision and opinion properly considered all of the medical evidence presented.

Accordingly, the court finds that the ALJ properly analyzed the evidence of record as a whole, and his RFC assessment is supported by substantial evidence; therefore, the ALJ's decision is due to be affirmed.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this September 25, 2015.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE